The next matter, number 23-1166, Mariala Griselda Chun-Mundes et al. versus Merrick B. Garland. At this time, would counsel for the petitioners please introduce himself on the record to begin? Good morning, your honors. May it please the court, my name is Daniel Welch, and I'm here on behalf of the petitioners. I'd ask to reserve two minutes for rebuttal, if that's necessary. Thank you. As you know, this is an immigration asylum case. And we believe there are two main issues that require remand. The first is the one-year filing deadline issue. The board and the immigration judge stated that the circumstances provided by the petitioner were not extraordinary circumstances that prevented her filing the one. And let me ask, when you go to that, I know the board and or the I.J. mentioned that your client was doing many other things, therefore could have, you know, done this on time. So would you have that appreciation of the evidence and goes to wait and we shouldn't disturb that? Well, your honor, I think that's the incorrect analysis. I think that just because you can go to the grocery store, just because you can go to the doctor to get help for your medical problems, doesn't mean that you have the mental capacity to confront your illegal immigration status. This woman had anxiety and depression. It was undiagnosed at the time. She also had dizziness and headaches and she had a difficult pregnancy. So I think that that's a superficial analysis, your honor, and that it's improper use of those. Is there anything in that expert, you know, analysis or, you know, medical analysis saying exactly what you just told us? That she just doesn't have the capacity to go to the immigration, you know. We didn't have anything like that, your honor. We did have a letter from the doctor explaining that she's had it for a while, it was undiagnosed, but we didn't have anything that said that she couldn't, you know, confront her illegal immigration status. But if you don't have that, then how are we to? Well, I think, your honor, that they had to address the specific circumstances that she alleged. All they did was say that, well, she could do this, this, and this, and therefore, that means that she must have been able to do this, but, you know, I think that's an improper use of the legal standard in that they needed to address the specific circumstances that she mentioned. Counsel, before, as you seem to be focusing on her severe emotional or mental distress argument, and so the question I have for you is, did you make that particular argument about her severe emotional mental health to the immigration judge, and if so, where is that in the record? We did, your honor. We did. I don't have a record site right now. I could follow up later, but we did make that claim. The judge didn't consider it in his decision. All he mentioned was the physical ailments. Well, that's why I wanted to ask you, so you didn't just focus on her difficult pregnancy, which sounded difficult. Correct, your honor. We filed a letter from the doctor, and we had medical records showing all of these issues, and the immigration judge completely overlooked it and just went to the physical ailments, not the mental health. But did she raise it in her testimony or in your pre-trial brief? Yes, she did. She did. It is in the transcripts, your honor, and she testified, your honor, that she actually couldn't work during this time period. She was suffering so much, she was unable to work, and so that is also in the transcript. So, you know, going back to the filing deadline, the government contends that this court doesn't have jurisdiction because all we're doing is bringing up a factual allegation. And so, you know, it's our contention that we are contesting the legal analysis under the legal standard. It's kind of a mixed question of law and fact. And I would point to Guerrero-Lasprilla v. Barr, which is a Supreme Court decision, 140 Supreme Court, 1062, 2020, which said that questions of law include the application of a legal standard to undisputed or established facts. But in that case, it's clear, but is there a case from this court or other courts saying that when issues of, like, medical, mental, possible disability, or temporary disability arise, a judge should do X, Y, or Z? I don't think there's any... No, your honor, but... This would be kind of like, we would be laying out a rule for these sentences, correct? I don't think so, your honor. I think under 8 U.S.C. section 1252 A.2.D., it specifically states that the immigration judges need to consider things like mental health problems, physical health problems, among other things. So the statute says that this needs to... So if we look at what, you know, and I assume after, you know, you'll send us a Rule 28J letter and tell us exactly, pinpoint the transcript. But if we check the transcript, once we review it and you did bring it up properly, then that would be the legal error. Correct. Or I may have misunderstood your question, your honor. No. Well, obviously we need to review the transcript, and so you have to tell us exactly where in the transcript it is. Of course, yes, yes. That's correct. But if it is preserved and it was raised below, then what you're saying is that is an error. The judge should have perhaps inquired more once you have that type of information, that there's a possible mental issue. Absolutely, yes, your honor. Simply not say, I don't have anything else, or I just have a general letter here from a doctor, we need to inquire a bit more. Exactly, yes, your honor. Counsel, correct me if I'm wrong, in Guerrero-La Esparilla, the Supreme Court was concerned with the doctrine, the legal doctrine of equitable estoppel, wasn't it? Equitable tolling, your honor. Equitable tolling, yes. Yes. And here, we're talking about extraordinary circumstances, which sounds to me like factual. Yes. But, so tell me why it's legal. So it's legal, your honor, in our opinion, because we are addressing the legal analysis under the legal standard to the settled facts, and that's what they were saying in Guerrero. Essentially, that was a motion to reopen, and it was an equitable tolling, but it was considered a factual analysis until this case. The Fifth Circuit said, no, we can't review this, because it's a question of law, and the Supreme Court overturned that and said, you know, that would be crazy, hold on, let That interpretation would forbid review of any board decision applying a properly stated legal standard, irrespective of how mistaken that application might be. By reciting the standard correctly, the board would be free to apply it in any manner directly contrary to well-established law. And so, yes, the facts are in place, but we're alleging that the immigration judge and the board didn't use the legal standard in place in applying those facts. And the legal standard is? The legal standard is he or she did not intentionally create the circumstances. The circumstances were directly related to his or her failure to file the application, and the delay was reasonable under the circumstances. They, you know, they made comments like, your honor said, she was able to do this, so she must have been able to do that. They didn't address why her mental health problems were not good enough, or why her physical ailments. So I'm still a little lost at the first step. That sounds like substantial evidence review to me is what we would be undertaking. So I think it's very comparable to Guerrero-Lasprilla, your honor, and I think that we're arguing that there are settled facts, and it's a mixed question of law and fact. We're saying they're not applying, or they're not doing a correct legal analysis under the standard, and so that's our position. Let me also ask you, and again, I think you're a little out of time, but I'll ask this question if any judges have any follow-up questions. Assuming it's filed within the one year, isn't this supported still by substantial evidence of record? I know one of the things, there's the issue about the grandmother, she's still in Guatemala, she's safe there. And the judge made some factual findings, again, weighing the evidence, and, you know, so what, how do you get around that? So your honor, that is really not on appeal because the board only addressed two matters. They stopped short of all of that analysis. They said, well, she's not a member in this particular social group, so we don't have to go any further. And so my next argument was with regard to the membership in the particular social group, and I would just point the court to their recent decision in Espinoza-Ochoa v. Garland, which says that, I know it's a little bit different, that was concerning cognizability, this is concerning membership in a particular social group. But a superficial quick look should not, you know, it should not be construed solely on the basis of their words, but rather analyzing the case-by-case basis with the individual circumstances in mind. She lived in a family home that was in her family for generations. She was either, she was an owner, she was in fact an owner, and we believe the analysis was wrong there as well. Thank you, Your Honor. Thank you. Okay. Thank you, counsel. At this time, Attorney DeRocha will please introduce herself on the record to begin. Good morning, Your Honors. Good morning. May it please the Court. Remy DeRocha Afudu, representing the United States Attorney General. The Court should deny in part, and dismiss in remaining part, the petition for review. First of all, the Court locks jurisdiction. Could you get the microphone a little closer? Thank you. The Court locks jurisdiction to review the agency's denial of petitioner's asylum application as untimely, and not within any exception to the one-year filing deadline. Petitioner has not raised any tolerable constitutional or legal claim that would confer jurisdiction on this Court. The Court should dismiss that aspect of the petition for review. Counsel, may I ask you, one potential question of law that I thought petitioner raised was that the BIA and the IJ just disregarded her claim of severe emotional and mental distress. Could you address that? If that were correct, and it were made properly, and then it was disregarded, wouldn't the law that we could review? If they did disregard it, Your Honor, but in this case, the agency did not. On page 80 of the administrative record, the immigration judge did mention petitioner's mental health issue as part of the reason for denying that claim. Specifically, the immigration judge mentioned serious illness, mental health issues, or physical conditions, which may amount to extraordinary circumstances that will excuse the late filing, but that the lead respondent's health conditions in this case are not severe enough to have prevented her from filing her asylum application in a timely manner. Counsel, I guess my follow-up question to you about that is I did see that in the record, but that first clause of the sentence to me reads like it's just reciting the legal standard rather than actually recognizing her particular allegations of severe emotional and mental distress here. Could you address that? At first glance, Your Honor, it may seem so, but with the immigration judge's statement that her health conditions generally, cumulatively, were not severe enough to have prevented her from filing her asylum application, it ties in all those conditions. And if you look on page 74 of the administrative record also, Your Honor, the immigration judge did state that the court has considered all admitted evidence and testimony in its entirety, even if not specifically mentioned further in the text of this decision. So you think that catch-all should cover the claim? It should cover it. And also, even if there were some error, the board addressed the issue on page 4. It says here, the last paragraph there talks about her mental health issues, and starting there, and on page, the record does not show that last paragraph on page 4. The record does not show the respondent's mental capacity following her entry into the United States prevented her from filing her application within one year of her arrival. And so the board cited the record and looked at her mental health issues, weighed the evidence, and decided that she had not established extraordinary circumstances. But again, Your Honor, this issue is not even dispositive of this case, because the agency's analysis of petitioner's particular social group claim is the dispositive issue here, because withholding of removal and asylum claims generally follow the same standards. And so setting aside this issue of extraordinary circumstances and moving to the core issue here, the court should deny the petition for review with respect to petitioner's claims for withholding of removal and, of course, asylum. Let me ask one of the reasons you're saying this, and I ask that of opposing counsel. I know the ILJ below basically said there was no evidence that petitioner owned this particular land. He's not even a landowner, so he shouldn't even be part of a social group. Am I correct? Yes, Your Honor. I may have missed your question, Your Honor. No, I note that the IJ said that petitioner did not show that he owned any part of that land. It was actually his grandmother's. Yes, Your Honor, and petitioner stated in her brief that she was not a landowner. She conceded that she was not a landowner. So there's no other social group, right? There is no other social group because she didn't exhaust the other social group relating to her race, the man and gender ethnicity group. Counsel, I think on appeal, though, to us, the petitioner is focusing on imputed membership in the social group. So could you address that? Yes, Your Honor, and petitioner also failed to exhaust that issue before the agency. She did not raise that issue before the agency, and she seemed to expect the agency to divine her social group, whereas the law is specific, case law by the board and this court, that any particular social group should be delineated specifically, and which she did with the assistance of counsel, stating that she was a communal landowner of Ishigun, Guatemala, that refused to cooperate with criminal gangs. And when she saw that she couldn't fit into that social group, she pretty much admitted that she was not a communal landowner. She now came up with this imputed membership theory, which was never presented before the agency. Well, that's my question to you because I understand the petitioner has the obligation to delineate a social group that IJ can't guess. Of course, that makes sense. But the social group, the particular social group, was delineated here. So the question is not so much whether it was delineated, but whether her membership in it was direct or imputed. And are you saying that there's very clear case law that shows that you have to very clearly tell the IJ it's imputed membership, not direct? Well, yes, Your Honor. Your Honor, there is case law that was cited in our brief that actually in this court, in which this court actually did state that the imputation is a qualitatively different issue from actual membership or, say, in the context of political asylum claim, imputed political. And I'll go, it was Chavez v. Garland, and that's on page 30 of our brief, where the court rejected the argument that reasons for finding that actual members of a gang are barred from recognition simply do not apply to those incorrectly perceived to be gang members. By the same logic, the government's position is that petitioners argument that her membership claim encompasses an unstated imputation claim that the agency should have considered necessarily failed. I saw your citation to that case, and I understand your argument. But I think it's a little bit of a different argument, which is that these are two different things logically, which I agree with. But I guess you're making the claim that there was a failure to exhaust. And so I'm asking you, do you have case law by any chance that makes it very clear that an imputation claim has to be raised for the PSG or it's not exhaust? I don't have anything specifically on point precisely on that issue. But there are so many cases that have skirted the issue and stated specifically also that a particular social group needs to be stated with specificity, you know, so that the agency knows what the petitioner is claiming. And again, another issue is that petitioner did not, even if for some reason the immigration judge should have addressed imputation as part of her claim, petitioner did not raise the issue to the board because the board could have corrected it. And so petitioner went through two steps of review, did not raise the issue at all, and then in her opening brief to this court brought up the issue. And the court's recent decision in Espinosa-Ochoa does not help petitioner at all because it's so qualitatively different as we stated in our 28-J letter. So you think the failure to raise the imputation argument to the BIA is really the critical point here? Yes, Your Honor, it is critical because if the board, the board could have corrected that issue. And there is case law, enough case law indicating that in the court. And so on that basis, Your Honor, petitioners, the petition for review should be denied. And likewise, petitioner's arguments regarding her gender and man descent too, they were not exhausted. And petitioner was represented by counsel throughout her proceedings. So it was really a failure, Your Honor, of petitioner not raising the issue of an imputed particular social group claim. Because she stated specifically that she was a communal land owner. And again, the agency addressed the issue and looked at it in depth and did state that this was due to civil strife in any event. My time is up, Your Honor. Any further questions? If there are no questions. Thank you very much. Thank you very much, Your Honor. Okay. Rebuttal. Counsel Welch, you have two minutes. Thank you, Your Honor. Daniel Welch on behalf of the petitioner. I just want to point out that Chavez v. Garland was about gang members or perceived gang members. And that's much different than communal land owners or perceived communal land owners. And the reason it's different is because gang members are violent criminals. And obviously, the immigration authorities don't want to allow asylum for violent criminals. Being a perceived gang member is much different. They're not a violent criminal. And so it's important to point that out to the court. But did your client raise the imputation issue before the agency? She did not, Your Honor. But it's our contention that attaching perceived or imputed to a particular social group under these particular set of facts and circumstances is not necessary. I mean, if you look at the facts of the case, first of all, this is my point. Why was it necessary to raise it to us but not to the BIA counsel? Well, Your Honor, you know, well, first of all, I would argue that she is an owner anyways. Let's see. We believe that being a communal land owner is under these specific circumstances encompasses both actual ownership and perceived ownership. And we would argue that she actually is an owner. She lived on the property. She's an indigenous person, so she doesn't know if she owns the property or not. She's living there with her grandmother. They reside in a village. It's the same piece of property that's been in her family for generations. Her grandmother was born there. When petitioner was asked how long her family lived there, she said a very long time. And so, you know, do these properties in this indigenous village have legal title? I mean, possession is nine-tenths of the law. In most indigenous communities in Guatemala, possession is the only law. And so her living there makes her a communal land owner. And if they had done an analysis, it would have forced them to consider whether what her persecutor's motive was. That's what matters, the persecutor's motive. It doesn't matter if she owns it or not. It's what the persecutor thinks. And so that's why imputed doesn't have to be pointed out from the beginning. That's my argument. All right. Thank you very much, counsel. Thank you. Thank you, counsel. That concludes argument in this case. Let's call the next case.